Cheryl GABOW Petitioner

v.

Doris DEUTH, Warden Respondent

No. CIV.A.3:02CV–541–H.

United States District Court,
W.D. Kentucky
at Louisville.

Feb. 2, 2004.

Dennis J. Burke, Richard E. Neal, Frankfort, KY, for Petitioner.

Elizabeth A. Heilman, Attorney General, Frankfort, KY, for Respondent.

## MEMORANDUM AND JUDGMENT

HEYBURN, Chief Judge.

The above matter was referred to United States Magistrate Judge James D. Moyer who filed comprehensive Findings of Fact, Conclusions of Law and Recommendation. He recommended that Petitioner's petition for writ of habeas corpus be conditionally granted. Respondent has filed well-argued objections.

The facts of this case are already well stated. The issue of how courts may admit the confession of a co-defendant that also implicates the defendant is among the most difficult one can face. The state trial court made certain difficult decisions. The Supreme Court of Kentucky was able to review the issues with less time constraints and concluded that the sufficient particularized guarantees of trustworthiness existed to support use of the co-conspirators's confession.

This Court has carefully reviewed the Magistrate's decision and the objections to it. In a most difficult area of the law, the Court finds that the Magistrate has thoroughly described the development of Supreme Court doctrine to date and has

carefully and correctly applied that doctrine to this case. The Court intends no disrespect to the fine memoranda by both sides by concluding that it finds no need to add or detract from the Magistrate's analysis. The Court accepts the Findings of Fact, Conclusions of Law and Recommendation of the Magistrate Judge, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Ms. Gabow's petition for a writ of habeas corpus be GRANTED. The Commonwealth of Kentucky shall release Cheryl Gabow from custody, unless she is retried in accordance with Supreme Court precedent within one hundred eighty days.

IT IS FURTHER ORDERED that Respondent's motion to dismiss or, in the alternative, for summary judgment (Docket No. 7) is DENIED AS MOOT.

This is a final judgment and there is no just cause for delay.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

MOYER, United States Magistrate Judge.

Cheryl Gabow has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket no. 1), in which she alleges that her rights under the Confrontation Clause of the Sixth Amendment were violated during her trial because the court admitted the unredacted confession of her non-testifying codefendant. The district court referred the matter to the magistrate judge for evaluation and preparation of proposed findings of fact and a recommendation (docket no. 4). The respondent subsequently filed a motion to dismiss Ms. Gabow's petition, or, in the

alternative, for summary judgment (docket no. 7).

Having reviewed Ms. Gabow's petition, and Warden Deuth's motion, and having considered the parties' arguments, the magistrate judge concludes that the district court should issue a conditional writ of habeas corpus releasing Ms. Gabow from custody, unless she is retried within one hundred eighty days, and deny the respondent's pending motion to dismiss (or, in the alternative, for summary judgment) as moot.

## I. FINDINGS OF FACT

Cheryl Gabow is a prisoner at the Kentucky Correctional Institute for Women. In February of 1995, a man named Sam McMillen shot Ms. Gabow's estranged husband, who later died from his injuries. *See Gabow v. Commonwealth*, 34 S.W.3d 63, 67 (2000). Ms. Gabow and her boyfriend, David Brangers, hired Mr. McMillen and a man named James Cecil to murder Fred Gabow, in the hopes that Ms. Gabow could collect the life insurance proceeds. *Id.* In response to police questioning, Ms. Gabow and Messrs. McMillan, Brangers and Cecil all confessed to varying degrees of involvement in the plot to murder Fred Gabow. *Id.*

All four co-conspirators initially were scheduled to be tried together. Mr. Brangers pled guilty before trial, however, in return for a favorable sentence. *Id.* Then, Mr. McMillan's case was severed when his competency to stand trial became an issue. *Id.* The two remaining accomplices, Ms. Gabow and Mr. Cecil, were then tried jointly, and both invoked their respective rights under the Fifth Amendment not to testify. *Id.*

During the presentation of the Commonwealth's case against Mr. Cecil and Ms. Gabow, portions of their confessions were read into evidence. *Id.* at 67–68. Only portions of their confessions were read initially, because each of their confessions had been redacted to delete any reference to the other person. *Id.* at 68. After the Commonwealth concluded its case in chief, however, Ms. Gabow decided that she wanted to introduce her unredacted videotaped confession, which included statements in which she claimed to have renounced her role in the conspiracy to murder her husband. *Id.* (In Kentucky, properly established voluntary and complete renunciation is a recognized and statutorily defined defense to the charge of conspiracy to commit murder. *See* Ky. Rev.Stat. 502.040(2).)

Because Ms. Gabow's unredacted confession inculpated Mr. Cecil, the trial judge then bifurcated the trial. *Id.* As a result of the severance, the Commonwealth fully tried its case against Mr. Cecil before resuming its prosecution of Ms. Gabow. *Id.* Accordingly, the same jury heard all the evidence against Mr. Cecil, convicted him, and then determined his penalty, before it heard the rest of Ms. Gabow's case and decided her fate. *Id.* at 76. This is significant, because during the penalty phase of the case against Mr. Cecil, the trial court admitted into evidence *his* unredacted confession, which did not include any reference to Ms. Gabow's alleged renunciation,

but included testimony that Mr. Cecil visited with Ms. Gabow on the day Mr. McMillen shot Fred Gabow, at which time she pressed him to complete the murder quickly. *Id.* at 67, 68, 76.

Ms. Gabow asserts that the introduction of Mr. Cecil's unredacted confession "devastated" her renunciation defense, because the jury they shared could have inferred from his explicit statements about the degree of Ms. Gabow's involvement in the murder plans and his failure to mention her alleged renunciation, that she either did not renounce her participation in the murder plot, or, even if she did, she later rejoined the conspiracy. *Id.* at 76. She therefore asserts that the admission of Mr. Cecil's unredacted confession violated her rights under the Confrontation Clause of the Sixth Amendment.

In a timely and direct appeal[1] to the Kentucky Supreme Court, Ms. Gabow raised her Confrontation Clause argument, among others. The Kentucky Supreme Court, however, rejected her argument in a published opinion, *Gabow v. Commonwealth*, 34 S.W.3d 63 (Ky.2000). Ms. Gabow then petitioned the United States Supreme Court for a writ of certiorari, but it denied her request.[2] Ms. Gabow next timely filed her petition for writ of habeas corpus with this court.

## II. CONCLUSIONS OF LAW

The relevant habeas corpus statute, 28 U.S.C. § 2254, states in pertinent part[3] that a petition for a writ of habeas corpus

---

1. In Kentucky, if a defendant is sentenced to life in prison, and not eligible for parole before twenty-five years have expired, her appeal is properly presented directly to the Kentucky Supreme Court. *See* Ky. Const. § 110(2)(b).

2. *See Gabow v. Kentucky*, 534 U.S. 832, 122 S.Ct. 80, 151 L.Ed.2d 43 (2001).

3. 28 U.S.C. § 2254 also imposes other requirements, such as a one year statute of limitation for filing the petition, and a requirement that the petitioner fully and com-

by a person in custody pursuant to the judgment of a state court shall not be granted unless the petitioner can show that the state court's adjudication of her claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). In this matter, Ms. Gabow does not assert that the Kentucky Supreme Court's opinion unreasonably applied the available facts, or that there exist newly-discovered facts that justify a review of her conviction. She asserts instead that the Kentucky Supreme Court's opinion affirming the trial court's decision to admit the unredacted confession of her non-testifying codefendant was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent.

■■■ A state's supreme court renders an opinion contrary to clearly established Supreme Court precedent when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if it decides a case differently than the Supreme Court has on a set of "materially indistinguishable" facts. *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision unreasonably applies clearly established Supreme Court precedent "if it either (1) correctly identifies the governing legal principle from the Supreme Court's decisions but then unreasonably applies that principle to the facts of the prisoner's case, or (2) unreasonably extends, or unreasonably declines to extend, a clearly established legal principle to a new con-

text." *See Calvert v. Wilson,* 288 F.3d 823, 828 (6th Cir.2002)(citing *Williams,* 529 U.S. at 412–13, 120 S.Ct. 1495). In this case, the issue is whether Kentucky's highest court disregarded or unreasonably applied existing Supreme Court precedent regarding the admissibility of an out of court statement made by a non-testifying codefendant.

## A. Supreme Court Precedent

The Sixth Amendment of the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." What that seemingly simple clause (the so-called "Confrontation Clause") means in practical terms, however, has had a long and rather convoluted history in the United States Supreme Court.

In 1965 the Supreme Court affirmed that the Sixth Amendment, including its Confrontation Clause, is made applicable to state prosecutions and trials by virtue of the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Since then, the Supreme Court has wrestled with what protections the Confrontation Clause affords a defendant when the government seeks to introduce as evidence out of court statements (*i.e.,* hearsay) made by an actually unavailable (dead or missing) or theoretically unavailable (young child or non-testifying codefendant) witness. *See generally Calvert, supra,* 288 F.3d 823 (analyzing precedent and directing the district court to issue a writ of habeas corpus because Ohio's supreme court had erroneously admitted the inculpatory confession of a non-testifying codefendant).

pletely exhaust her available state remedies before filing the petition. Neither the timeliness of Ms. Gabow's petition nor her satisfac-

tion of the exhaustion requirement is at issue in this matter.

In *Douglas,* the Court applied *Pointer* and held that the a defendant's inability to cross-examine a witness who invoked his Fifth Amendment right not to testify about an alleged confession denied him rights secured by the Confrontation Clause. *Douglas,* 380 U.S. at 419, 85 S.Ct. 1074. Thus, even though the witness was physically present at the trial, the Supreme Court held that the defendant's inability to cross-examine the witness about the alleged confession resulted in an unconstitutional conviction.

Three years later, in *Bruton v. United States,* 391 U.S. 123, 135–36, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court was presented with the issue of whether a curative instruction could eliminate the need for any cross-examination. The Court specifically evaluated whether the admission during a joint trial of a non-testifying codefendant's confession that inculpated the defendant violated the Confrontation Clause, even though the jury had been instructed to disregard that confession when determining the non-declarant's guilt. The Court held that it did, noting that limiting instructions are no substitute for cross examination. *Id.* at 137, 88 S.Ct. 1620.

The Supreme Court later observed, however, that were the language of the Confrontation Clause read literally, "it would require, on objection, the exclusion of any statement made by a declarant not present at trial." *See Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). It then noted that "if thus applied, the Clause would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." *Id.* Accordingly, the Court has articulated what it later described as a "general approach for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause." *Ida-*

*ho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)(referring to decision in *Roberts* ).

The "general approach" described in *Roberts* is this:

> When a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable [for his statement to be considered for admission into evidence]. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred, without more, in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of truthfulness.

*Roberts,* 448 U.S. at 66, 100 S.Ct. 2531 (internal citation omitted). In summary, a non-testifying accomplice's inculpatory confession is improperly admitted at trial unless the prosecutor can overcome the statement's presumptive unreliability. *Roberts,* 448 U.S. at 63–66, 100 S.Ct. 2531.

After articulating the general approach in *Roberts,* however, the Court gave only limited guidance as to what might constitute "adequate indicia of reliability." The Court did not declare what are among the "firmly rooted hearsay exceptions," other than to suggest dying declarations are and to emphasize that "[r]eflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the [Confrontation] Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the general rule [that it is presumptively unreliable].'" *Id.* at 63, 65, 100 S.Ct. 2531. Nor did it clearly define "particularized guarantees of truthfulness," other than to note that subjecting a declaration to adversarial cross-examina-

tion was among them. *Id.* at 71, 100 S.Ct. 2531. Thus, several years after *Roberts,* the Supreme Court revisited the Confrontation Clause in five cases decided in the 1986 and 1987 terms. *See United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986); *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987); and *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

In *Inadi* and *Bourjaily,* the Supreme Court wrestled with the scope of the Confrontation Clause's protection as applied to statements made by conspirators. In *Inadi,* 475 U.S. at 394–400, 106 S.Ct. 1121, the Court held that the general requirement of unavailability did not apply to incriminating out of court statements made in furtherance of the conspiracy by a non-testifying co-conspirator, and, therefore, the Confrontation Clause did not prohibit the admission of those statements at trial, even if the prosecution did not establish that the declarant was unavailable to testify. Then, in *Bourjaily v. United States,* 483 U.S. at 182–83, 107 S.Ct. 2775, the court held that out-of-court statements made in furtherance of the conspiracy by non-testifying conspirators carried with them sufficient "indicia of reliability" to be properly admitted, because the hearsay exception for co-conspirator's statements was firmly rooted in our jurisprudence. As noted, however, both *Inadi* and *Bourjaily* specifically addressed statements made in furtherance of a conspiracy. They did not address conspirators' confessions or other inculpatory statements made after the fact.

The court squarely addressed the admissibility of an accomplice's confession, however, in *Lee, Richardson* and *Cruz, supra.* In *Richardson* and *Cruz,* which were de-

cided on the same day, the Court analyzed some issues left open by the *Bruton* holding. In *Richardson,* the Court declared that a limiting instruction is adequate to protect a defendant's rights under the Confrontation Clause where a non-testifying codefendant's inculpatory confession is redacted to remove all references to the identity or existence of the defendant. *Richardson,* 481 U.S. at 211, 107 S.Ct. 1702. In *Cruz,* the Court held that a limiting instruction is *not* adequate to protect a co-defendant's rights under the Confrontation Clause where the defendant's own confession has been admitted into evidence at trial and corroborates his co-defendant's inculpatory confession. *Cruz,* 481 U.S. at 193, 107 S.Ct. 1714. The Court noted in dicta, however, that the corroborating nature of the two confessions was indicative of reliability, which "may be relevant to whether the confession should (despite the lack of opportunity for cross-examination) be admitted as evidence against the defendant." *Id.* at 192–93, 107 S.Ct. 1714. In making that observation regarding reliability, the Court referred to its opinion in *Lee,* which had been decided the previous term.

In *Lee,* the Court analyzed what might constitute sufficient indicia of reliability that would justify the admission of a non-testifying co-defendant's confession into evidence against the defendant at trial. In that case, the defendant and her boyfriend killed her aunt and a neighbor. They both confessed to the police, after being advised of their rights. Ms. Lee's confession was the product of interrogation. Her boyfriend, Mr. Thomas, initially refused to talk to the police, but later prepared a statement after the police told him that Ms. Lee had already implicated him, and after Ms. Lee herself implored him to share culpability with her.

The confessions elicited from Ms. Lee and her boyfriend and ultimately introduced at trial contained many similarities. *Id.* at 545, 106 S.Ct. 2056. They differed in two critical respects, however, specifically (1) the roles each played in the killing of the neighbor and (2) the issue of premeditation. *Id.* Based on these facts, the Supreme Court held "on the record before us, there is no occasion to depart from the time-honored teaching that a codefendant's confession inculpating the accused is inherently unreliable, and that convictions supported by such evidence violate the constitutional right of confrontation." *Id.* at 546, 106 S.Ct. 2056.

In so holding, the Supreme Court did not evaluate what might constitute a firmly rooted hearsay exception, nor did it clearly define what might constitute particularized guarantees of trustworthiness. It did, however, reject several proffered guarantees of trustworthiness, and thus somewhat loosely defined what constitutes "particularized guarantee of trustworthiness" by negative implication.

The Court first specifically rejected the notion that, because Mr. Thomas's confession was voluntary for purposes of the Fifth Amendment (*i.e.,* Mr. Thomas confessed after being properly advised of his rights under *Miranda* ), it was reliable for purposes of the Confrontation Clause. *Id.* at 544, 106 S.Ct. 2056. The Court declared that a finding of voluntariness under the Fifth Amendment "does not bear on the question of whether the confession was also free from any desire, motive, or impulse [that the declarant] may have had either to mitigate the appearance of his own culpability by spreading the blame or to overstate [his co-defendant's] involvement in retaliation for her having implicated him in the murders." *Id.*

The Court next rejected the notion that Mr. Thomas's confession was reliable sim-ply because it "interlocked" with Ms. Lee's on some points:

As we have consistently recognized, a codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another. If those portions of the codefendant's purportedly "interlocking" statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment. In other words, when the discrepancies between the statements are not insignificant, the codefendant's confession may not be admitted.

476 U.S at 545, 106 S.Ct. 2056. The court did not, however, provide a list of what constitute particularized guarantees of trustworthiness, except to suggest in dicta that whether a statement was tested by cross-examination, or its equivalent, would be a noteworthy consideration. Thus, following *Lee* and *Cruz*, it still was not entirely clear what exactly constituted a "firmly rooted" hearsay exception or "particularized guarantees of trustworthiness."

Accordingly, the Supreme Court addressed the issue again four years later. In *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the Court evaluated whether the admission at trial of statements made by a child to a pediatrician violated her mother's rights under the Confrontation Clause. In that case, the mother was convicted of lewd conduct with a minor, based on a pediatrician's testimony about statements her 2½ year old

daughter made to him. The child was deemed not capable of testifying, so the trial court admitted the statements under Idaho's residual hearsay rule, which permits the admission of otherwise inadmissible statements in the interests of justice if they have "equivalent circumstantial guarantees of trustworthiness" as the specifically enumerated hearsay exceptions. *Id.* at 809–11, 110 S.Ct. 3139.

In *Wright,* the Court attempted to clarify both parts of the "indicia of reliability" test. It first addressed the notion of what constitutes a "firmly rooted hearsay exception" and noted that such exceptions are those that possess the longstanding "imprimatur of judicial and legislative experience" in assessing the trustworthiness of certain types of out of court statements. *Id.* at 817, 110 S.Ct. 3139. The Court decided that Idaho's residual hearsay exception did not qualify because it permitted an ad hoc determination of reliability. *Id.*

The Court then turned to the issue of "particularized guarantees of trustworthiness," and specifically declined to "endorse a mechanical test for determining 'particularized guarantees of trustworthiness' under the Clause." *Id.* at 822, 110 S.Ct. 3139. The Court did, however, declare that particularized guarantees of trustworthiness must "be shown from the totality of the circumstances," and was clear to note that "the relevant circumstances include only those that surround the making of the statement and render the declarant particularly worthy of belief." *Id.* at 819, 110 S.Ct. 3139. "In other words," the Court said, "if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." *Id.* at 820, 110 S.Ct. 3139. Thus, the Court noted, "[t]o be admissible under the Confrontation Clause,

hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Id.* at 822, 110 S.Ct. 3139.

A few years later, in *Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), the Court evaluated the scope of Federal Rule of Evidence 804(b)(3), and specifically addressed the issue of whether the admission of a defendant's non-self-incriminating statements in the context of a broader self-incriminating statement falls within the exception to the hearsay rule for statements against penal interest. In *Williamson,* the Court rejected the notion that a statement viewed overall as self-inculpatory is properly viewed in its entirety as trustworthy, declaring that

> the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability ... [t]he district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else.

*Id.* at 600, 114 S.Ct. 2431. Consequently, without directly addressing the Confrontation Clause, the Supreme Court determined that portions of an accomplice's out of court statements that are not explicitly self-incriminating are not considered firmly rooted hearsay exceptions.

*Williamson,* however, analyzed only the scope of a federal hearsay rule as it pertained to an accomplice's incriminating statements. It did not analyze the scope of the Confrontation Clause, nor did it evaluate whether an accomplice's unredacted confession might be used at trial. Accordingly, five years latter, in *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), the Supreme Court

once again addressed the issue of whether a non-testifying accomplice's unredacted confession could be admissible at trial.

In *Lilly*, a Virginia trial court admitted into evidence an accomplice's partially self-inculpatory statements to police on the theory that they were declarations against penal interest by an unavailable witness and their contents were corroborated by other evidence; therefore, the statements fell within a firmly rooted exception to Virginia's hearsay rules. In declaring the trial court's decision unconstitutional, the Supreme Court attempted to clarify and expand its Confrontation Clause analysis. Its efforts were of somewhat qualified success, however, because although all members of the Court decided that accomplice's statements should have been excluded because their admission violated the Confrontation Clause, much of the opinion represents only the views of a four member plurality.

The plurality first noted that "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Lilly*, 527 U.S. at 123–24, 119 S.Ct. 1887. It then restated the general rule, articulated in *Roberts*, that "the veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused when (1) 'the evidence falls within a firmly rooted hearsay exception' or (2) it contains 'particularized guarantees of trustworthiness' such that adversarial testing would be expected to add little, if anything, to the statement's reliability." *Id.* at 124–25, 119 S.Ct. 1887 (quoting *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531). The Court then analyzed whether the admission of a non-testifying accomplice's confession satisfies the general *Roberts* rule. In so doing, the plurality had the occasion to review and consolidate

its prior analysis, and thereby provide clearer guidance to lower courts about what constitute "firmly rooted hearsay exceptions" and "particularized guarantees of trustworthiness."

The *Lilly* plurality began with an analysis of "firmly rooted hearsay exceptions" and declared:

> We now describe a hearsay exception as "firmly rooted" if, in light of "longstanding judicial and legislative experience," it "rest[s][on] such [a] solid foundatio[n] that admission of virtually any evidence within [it] comports with the 'substance of the constitutional protection.'" This standard is designed to allow the introduction of statements falling with a category of hearsay whose conditions have proved over time "to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath" and cross-examination at trial.

*Id.* at 126, 119 S.Ct. 1887 (quoting *Wright*, 497 U.S. at 817, 110 S.Ct. 3139, and *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531). Whereas spontaneous declarations fall within this definition, declarations against penal interest do not, because (a) they define too large a class for meaningful Confrontation Clause analysis, and (b) the "against penal interest" exception "is not generally based on the maxim that statements made without a motive to reflect on the legal consequences of one's statement, and in situations that are exceptionally conducive to veracity, lack the dangers of inaccuracy that typically accompany hearsay." *Id.* at 126–27, 119 S.Ct. 1887.

The plurality then reviewed its line of cases regarding the admissibility of accomplices' confessions and noted that it had "over the years spoken with one voice in declaring presumptively unreliable accomplices' confessions that incriminate defendants." *Id.* at 131, 119 S.Ct. 1887 (citing *Bruton* and referring to *Douglas, Lee* and

*Williamson* ). It thus declared, "[t]he decisive fact, which we make explicit today, is that accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." *Id.* at 134, 119 S.Ct. 1887.

The plurality next turned to the Virginia Supreme Court's determination that Lilly's accomplice's confession was properly admitted because it was corroborated by other evidence and thus sufficiently reliable to merit admission. The plurality acknowledged its holding in *Bourjaily*, 483 U.S. at 182–84, 107 S.Ct. 2775, that "any inherent unreliability that accompanies co-conspirator statements made during the course and in furtherance of the conspiracy is *per se* rebutted by the circumstances giving rise to the long history of admitting such statements." *Lilly*, 527 U.S. at 137, 119 S.Ct. 1887. It nevertheless declared, however, that

> the historical underpinnings of the Confrontation Clause and the sweep of our prior confrontation cases offer one cogent reminder: It is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions that implicate the core concerns of the old *ex parte* affidavit practice—that is, when the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing.

*Id.* at 137, 119 S.Ct. 1887.

In a departure from the Court's prior tendency to define by negative implication, the *Lilly* plurality noted that "[t]he residual 'trustworthiness' test credits the axiom that a rigid application of the Clause's standard for admissibility might in an exceptional case exclude a statement of an unavailable witness that is *incontestably probative, competent, and reliable,* yet outside of any firmly rooted hearsay exception." *Id.* at 136, 119 S.Ct. 1887 (emphasis added). Accordingly, it declared that "[w]hen a court can be confident—as in the context of hearsay falling within a firmly rooted exception—that 'the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility,' the Sixth Amendment's residual 'trustworthiness' test allows the admission of the declarant's statements." *Id.* And, affirming the Court's reasoning in *Wright,* the plurality specifically noted the surrounding circumstances to be evaluated were those attendant to the making of the statement, by declaring, "[t]hat other evidence at trial corroborate[s] portions of [an accomplice's] statement is irrelevant" when evaluating guarantees of trustworthiness. *Id.* at 138, 119 S.Ct. 1887.

As noted earlier, however, *Lilly* is a plurality decision. Only four of the Justices concurred in the portion of the opinion that attempted to define "indicia of reliability." The magistrate judge nevertheless concludes that the *Lilly* plurality opinion is clearly established federal law because of language of the concurring opinions, particularly Justice Scalia's. In a brief concurrence, Justice Scalia concurred in the judgment, but did not join in the plurality's analysis regarding "indicia of reliability." His reasoning was simple and direct. In his opinion, the introduction at trial of a non-testifying accomplice's tape recorded statements was a "paradigmatic Confrontation Clause violation." *Id.* at 143, 119 S.Ct. 1887 (Scalia, J., concurring). In his view, all extrajudicial, inculpatory statements of non-testifying accomplices that are contained in "formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions" should be excluded from evidence without further inquiry. *Id.* Consequently, be-

cause the rule advocated by Justice Scalia is far more exclusionary than the one articulated by the *Lilly* plurality, the magistrate judge concludes that all state and lower federal courts are, at a minimum, required to follow the more relaxed standards set forth in that plurality opinion.

## B. The Post-*Lilly* Framework

 *Lilly* is the Supreme Court's most recent and thorough opinion regarding the scope of the protections afforded by the Confrontation Clause. Consequently, its framework, as articulated in the plurality opinion and informed by the Court's prior decisions, must guide the district court's analysis in this matter. That framework is as follows. When deciding whether to admit the confession of a non-testifying co-conspirator into evidence at trial, the court must first ask the following questions:

1. Do the statements in the confession shift or spread responsibility to the defendant?

 * If the answer is yes, the confession is presumptively unreliable.[4]

2. Can the presumption of unreliability be effectively overcome by other indicia of reliability?

A. Do the statements fall within a firmly rooted hearsay exception?

 * A non-testifying accomplice's confession does not fall within any firmly rooted hearsay exception.[5] Accordingly, if that is the type of statement the prosecution seeks to introduce, the Court must then ask,

B. Do the statements have particularized guarantees of trustworthiness?

 (1) The statement must be "incontestably probative, competent, and reliable."[6]

 (2) The truthfulness of the statements must be so clear from "the surrounding circumstances that the test of cross-examination at trial would be of marginal utility."[7]

 * The circumstances at issue are those that surround the making of the statement.[8]

 — They must be extrinsic to the trial process.[9]

 — They must provide no "temptation to falsehood, and must eliminate the possibility of fabrication, coaching or confabulation."[10]

4. *See Lilly*, 527 U.S. at 133, 137, 119 S.Ct. 1887 (plurality opinion) and *cf. id.* at 143, 119 S.Ct. 1887 (Scalia, J., concurring in judgment and declaring the admission into evidence of the confession of a non-testifying accomplice to be a "paradigmatic violation of the Confrontation Clause"); *Lee*, 476 U.S. at 541, 544–54, 106 S.Ct. 2056. *See also Douglas v. Alabama*, 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Pursuant to *Bourjaily*, statements made by a conspirator in furtherance of a conspiracy fall within a firmly rooted hearsay exception, but, as the Kentucky Supreme Court correctly noted, that is not the situation presented by the post-conspiracy confessions at issue in Ms. Gabow's case. *See Gabow*, 34 S.W.3d at 78 n. 11.

5. *See Lilly*, 527 U.S. at 134, 119 S.Ct. 1887 (plurality); *accord, Williamson*, 512 U.S. at

600–601, 114 S.Ct. 2431 (determining that the admission of non-self-inculpatory statements in the context of a broader incriminating confession does not fall within the exception to the hearsay rule for statements against penal interest).

6. *See Lilly*, 527 U.S. at 136, 119 S.Ct. 1887.

7. *Id.; Wright*, 497 U.S. at 820, 110 S.Ct. 3139.

8. *Lilly*, 527 U.S. at 136–39, 119 S.Ct. 1887; *Wright*, 497 U.S. at 819, 110 S.Ct. 3139; *see also Roberts*, 448 U.S. at 63, 100 S.Ct. 2531..

9. *Id.* at 138–39, 119 S.Ct. 1887 (citing *Wright* and *Lee* ).

10. *Wright*, 497 U.S. at 820, 110 S.Ct. 3139.

(3) Contemporaneous, or pre-trial (*e.g.*, at a preliminary hearing) cross-examination, or its equivalent (*e.g.*, adversarial questioning), is sufficient to meet this standard.[11]

(4) The following factors are *not* sufficient to meet this standard:

* The presence of corroborating evidence either in the form of other evidence introduced at trial, or "overlapping" statements from the defendant's confession.[12]

* The statements are part of a declaration that is deemed self-inculpatory overall.[13]

* The statement was voluntary for Fifth Amendment purposes.[14]

* There were no promises of leniency by the police.[15]

(5) The following factors militate *against* admitting the confession:

* The statements were made under the supervision of governmental authorities.[16]

* The statements were made in response to leading questions by the interrogator.[17]

* The statements were made without any contemporaneous adversarial questioning.[18]

* The declarant was under the influence of alcohol.[19]

* The declarant made the statements after learning that the defendant had already confessed or with the knowledge that the defendant was being contemporaneously questioned.[20]

* The statements describe past events.[21]

Given this clearly established Supreme Court precedent, the magistrate judge will now evaluate the propriety of the Kentucky Supreme Court's decision in *Gabow v. Commonwealth*, 34 S.W.3d 63 (Ky.2000).

### C. Ms. Gabow's Case

▆ In *Gabow v. Commonwealth*, 34 S.W.3d 63 (Ky.2000), the Kentucky Supreme Court rejected Ms. Gabow's argument that the admission into evidence of Mr. Cecil's unredacted confession violated her rights under the Confrontation Clause. In so doing, the court reviewed much of the case law cited above but approached its analysis of the propriety of the trial court's decision using a different framework. Rather than beginning with what the United States Supreme Court describes as the *Roberts* general approach, the *Gabow* court instead interpreted existing Supreme Court precedent as efforts to refine the holding articulated in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which the Kentucky Supreme Court misinterpreted as holding

---

**11.** *See Roberts,* 448 U.S. at 70–71, 100 S.Ct. 2531.

**12.** *Lilly,* 527 U.S. at 138, 119 S.Ct. 1887; *Wright,* 497 U.S. at 822–23, 110 S.Ct. 3139; *Lee,* 476 U.S. at 545–46, 106 S.Ct. 2056.

**13.** *Lilly,* 527 U.S. at 138–39, 119 S.Ct. 1887; *Williamson,* 512 U.S. at 599, 114 S.Ct. 2431; *Lee,* 476 U.S. at 545, 106 S.Ct. 2056.

**14.** *Lilly,* 527 U.S. at 138, 119 S.Ct. 1887; *Lee,* 476 U.S. at 544, 106 S.Ct. 2056.

**15.** *Lilly,* 527 U.S. at 138, 119 S.Ct. 1887.

**16.** *Id.* at 139, 119 S.Ct. 1887; *Lee,* 476 U.S. at 544, 106 S.Ct. 2056.

**17.** *Lilly,* 527 U.S. at 139, 119 S.Ct. 1887.

**18.** *Id.; accord, Roberts,* 448 U.S. at 70–71, 100 S.Ct. 2531.

**19.** *Lilly,* 527 U.S. at 139, 119 S.Ct. 1887.

**20.** *Id.* at 120–21, 139, 119 S.Ct. 1887; *Lee,* 476 U.S. at 544, 106 S.Ct. 2056.

**21.** *Lilly,* 527 U.S. at 139, 119 S.Ct. 1887.

"that a confession by a codefendant which [*sic* ] inculpates a nonconfessing defendant is inadmissible in a joint trial unless the confessing codefendant elects to testify and is therefore available with respect to the confession." *Gabow*, 34 S.W.3d at 76–78. That is not an accurate summary of the holding of *Bruton*.

In *Bruton v. United States*, 391 U.S. 123, 135–36, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court was presented with the issue of whether a curative instruction could eliminate the need for any cross-examination with respect to an inculpatory confession. The Court specifically evaluated in *Bruton* whether the admission during a joint trial of a non-testifying codefendant's confession that inculpated the defendant violated the Confrontation Clause, even though the jury had been instructed to disregard that confession when determining the non-declarant's guilt. The Court held that it did, noting that limiting instructions are no exception for cross-examination. *Id.* at 137, 88 S.Ct. 1620. Thus, while *Bruton* is an important case, its holding is different from the one attributed by the Kentucky Supreme Court.

After misconstruing the holding in *Bruton*, the Kentucky Supreme Court in *Gabow* then interpreted the Confrontation Clause cases decided since 1968 as establishing and refining three general exceptions to what it incorrectly interpreted as the *"Bruton* rule." The three exceptions set out by the Kentucky Supreme Court were as follows: "A confession of a nontestifying defendant is inadmissible at the trial of a codefendant unless (1) the confession has been sufficiently redacted . . . to delete not only the name but any reference to the existence of the codefendant; or (2) the confession falls within a 'firmly rooted' exception to the hearsay rule; or (3) the confession possesses 'particularized guarantees of trustworthiness.'" *Gabow*, 34

S.W.3d at 77. Thus, although misstating *Bruton*, the court ultimately stated the general approach to inculpatory confessions by nontestifying accomplices that was articulated in *Roberts* and refined by later Supreme Court decisions.

The Kentucky Supreme Court next avoided the issue of whether Mr. Cecil's confession might fall within a firmly rooted hearsay exception, stating "we need not engage in speculation about how a majority of the [United States] Supreme Court might decide this issue; for Cecil's account of his February 17, 1995[,] conversation with Cheryl Gabow falls under the third exception to *Bruton* in that it has 'particularized guarantees of trustworthiness.'" *Id.* at 78.

According to the Kentucky Supreme Court, the following "particularized guarantees of trustworthiness" collectively made Mr. Cecil's statement admissible against Gabow:

(1) The statement was self-inculpatory and did not shift blame from Cecil to Gabow;

(2) Gabow's own confession confirmed Cecil's confession in all significant respects except with respect to their February 17th conversation, and did not directly contradict Cecil's version of that conversation;

(3) Cecil's confession attributes statements to Gabow containing information not peculiarly within Cecil's knowledge but peculiarly within Gabow's knowledge;

(4) There is no indication that Cecil knew at the time of his confession that Gabow had claimed to have renounced her role in the conspiracy;

(5) Gabow's claimed renunciation exculpated Cecil as well as herself, so that Cecil had no motive to contradict her claim; and

(6) If Cecil had intended to "devastate" Gabow's renunciation defense, he could have done so directly instead of only inferentially.

*Id.* at 79–80. The court noted that it evaluated these putative guarantees in a cumulative matter. In other words, it assumed that "even though a particular guarantee of trustworthiness might be an insufficient indicia of reliability, an unspecified number of such guarantees, taken together, can constitute a totality of circumstances which would be just as reliable as a 'firmly rooted' exception to the hearsay rule." *Id.* at 78.

When it decided that it could evaluate reliability by assessing the collective effect of the putative guarantees of truthfulness attendant to Mr. Cecil's confession, Kentucky's Supreme Court referred to the United States Supreme Court's decision in *Wright,* in which the Court did declare that particularized guarantees of trustworthiness must be shown from the "totality of the circumstances." *Wright,* 497 U.S. at 819, 110 S.Ct. 3139. The *Gabow* court neglected to mention, however, that the *Wright* opinion also made it clear that "the relevant circumstances include *only* those that *surround the making of the statement and* render the declarant particularly worthy of belief." *Id.* (emphasis added). The Kentucky Supreme Court appears to have ignored the first part of that guidance, and also to have read the limiting "and" as if it were an "or," a position clearly rejected by existing Supreme Court precedent. *See* Section II.B, *supra.* Nevertheless, and without necessarily agreeing with the Kentucky Supreme Court's approach, the magistrate judge will now evaluate whether the *Gabow* court's analysis of each of the specific proffered guarantees of trustworthiness, individually or collectively, support

the trial court's decision to admit Mr. Cecil's unredacted confession.

### 1. Whether Mr. Cecil's Statement Was Self–Inculpatory and Did not Shift or Spread Blame to Ms. Gabow.

As a preliminary matter, the magistrate judge must explain the background of this "statement" as it is referred to by the Kentucky Supreme Court. The "statement" to which the court refers is not Mr. Cecil's entire unredacted confession. Rather, it appears to be the following portion, that the court refers to as Mr. Cecil's "February 17th discussion with Cheryl Gabow:"

*Hornback* (reading): [22] Okay, on February 17th we woke up and Sam began drinking vodka.

*Cecil:* Correct.

*Hornback* (reading): I drove to Cheryl's house and spoke with her about Sam. She then brought up the fact that Fred went to work at 10:00 p.m. and that we needed to be there by 9:30 p.m. to do the job.

*Cecil:* Correct.

*Hornback* (reading): Cheryl then said that it needed to be done before Monday because she was going to sign the divorce papers on Monday or Tuesday.

*Cecil:* Correct.

*Hornback* (reading): I told her that it would be done before Monday because Sam wanted it done. He said he was tired of waiting around and he wanted the money.

*Cecil:* Correct.

*Id.* at 76, 78.

Although Ms. Gabow objected to the introduction of Mr. Cecil's entire confession, the Kentucky Supreme Court focuses

---

**22.** Mr. Cecil gave a written confession to a Detective Hornback, who then read the statement aloud in a videotaped interview, permitting Mr. Cecil to make corrections or explanations. *Gabow,* 34 S.W.3d at 76.

its analysis only on this portion. The court appears to have done so because it deemed the confessions to be otherwise consistent with one another, but found this passage, coupled with Mr. Cecil's failure to mention any renunciation, to be indicative of inconsistency with respect to Ms. Gabow's claim of renunciation. *Id.* at 76. It therefore reasoned that because *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998) and *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) permit the use at trial of confessions that have been redacted to exclude direct or inferential references to the defendant, only this allegedly inconsistent portion was at issue. *See Gabow*, 34 S.W.3d at 76. The court correctly recognized that *Cruz, supra*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162, affects whether a codefendant's confession may be admitted against a defendant at a joint trial, but, as with *Bruton*, misstated the holding of *Cruz.*

*Cruz* held that "where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant [referring to *Lee*], the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him." 481 U.S. at 193, 107 S.Ct. 1714. While it noted that a defendant's confession may be considered in assessing whether his codefendant's statements are supported by sufficient indicia of reliability to be directly admissible against him despite the lack of opportunity for cross-examination, *see* 481 U.S. at 194, 107 S.Ct. 1714, *Cruz* does not hold, as the Kentucky Supreme Court states, that "the 'interlocking' nature of the confessions does not relate to the *harmfulness* of the codefendant's confession, but to its *reliability.*" *Gabow*, 34 S.W.3d at 77 (emphasis in original). Rather, that is merely a comment in *dicta.*

Consequently, the magistrate judge does not necessarily agree with the Kentucky Supreme Court's approach. While the case law is clear that portions of an accomplice's confession that have been stripped of any direct or indirect reference to the defendant may be admitted, it is not clear from the record that the remainder of Mr. Cecil's videotaped confession would qualify for admission on this basis.

Assuming, for the sake of argument only, however, that the *Gabow* court's decision to focus only on one passage of Mr. Cecil's confession was proper, the magistrate judge concludes that the court's analysis regarding the extent of the inculpatory nature of the statement was incorrect.

In deciding that the portion of Mr. Cecil's statement quoted above was sufficiently reliable for Confrontation Clause purposes, the court noted:

> Here, Cecil's account of his February 17th discussion with Cheryl Gabow was not self-exculpatory in that it neither minimized his role in the killing nor *shifted* the blame to Gabow. The very subject of the conversation inculpated Cecil in the plot to kill Frederick Gabow. Cheryl Gabow would have had no reason to tell Cecil when the murder needed to take place unless Cecil was also involved in the plot. "Even statements that are on their face neutral may actually be against the declarant's interest." [quoting *Williamson*, 512 U.S. at 603, 114 S.Ct. at 2436]. But this conversation was not even facially neutral. According to Cecil, when Gabow told him that the killing needed to take place before Monday, he assured her that "it would be done before Monday." If Cecil's motivation had been to minimize his involvement and *shift* the blame to Gabow, he presumably would not have repeated his own assurance to Gabow that the

murder would be accomplished on schedule.

*Id.* at 78–79 (emphasis added). The standard is not that a statement must *shift* the blame. Rather, the court should have determined whether the statement shifted or *spread* the blame. The *Gabow* court never made any analysis of blame spreading with respect to the quoted portion of Mr. Cecil's confession. This is a crucial error in its analysis.

Had the Kentucky Supreme Court conducted the proper blame spreading analysis, it would have been hard pressed to ignore the fact that Mr. Cecil spreads blame in the statement in two ways. First, his statement makes it plain that Ms. Gabow was involved in the murder plot; this alone spreads or shares the blame by inculpating a second participant. Second, his statement makes Ms. Gabow not just a passive participant, but one who actively directed and managed the murder, pushing for it to be accomplished on a particular time schedule. As Justices O'Connor and Scalia have noted "[a] reasonable [accomplice] might . . . think that implicating someone else would decrease his practical exposure to criminal liability, at least so far as sentencing goes. Small fish in a big conspiracy often get shorter sentences than people who are running the whole show." *Williamson,* 512 U.S. at 604, 114 S.Ct. 2431.[23] In light of that language, it is particularly worth noting that Mr. Cecil's unredacted confession was introduced during the penalty phase of his trial.

The Kentucky Supreme Court did not follow existing precedent when it determined whether the quoted portion of Mr.

Cecil's confession was properly admitted. *See Lilly,* 527 U.S. at 133, 137, 119 S.Ct. 1887 (plurality opinion) and at 143 (Scalia, J., concurring in judgment and declaring the admission into evidence of the confession of a non-testifying accomplice to be a "paradigmatic violation of the Confrontation Clause"); *Lee,* 476 U.S. at 541, 544–54, 106 S.Ct. 2056. *See also Douglas v. Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Thus, the *Gabow* court's first proffered guarantee of truthfulness lacks merit.

### 2. Ms. Gabow's Confession Corroborated Mr. Cecil's

The second guarantee of trustworthiness identified by the Kentucky Supreme Court was that "Gabow's own confession confirmed Cecil's confession in all significant respects except with respect to their February 17th conversation, and did not directly contradict Cecil's version of that conversation." In short, the Kentucky Supreme Court determined that Ms. Gabow's confession generally corroborated Mr. Cecil's confession and deemed the corroboration to be a guarantee of trustworthiness. The latter part of their analysis was unquestionably incorrect. The Supreme Court has consistently held that the presence of corroborating evidence, *either* in the form of other evidence introduced at trial, or "overlapping" statements from the defendant's own confession, is not sufficient, without more, to establish particularized guarantees of trustworthiness. *See Lilly,* 527 U.S. at 138, 119 S.Ct. 1887; *Wright,* 497 U.S. at 822, 110 S.Ct. 3139; *Lee,* 476 U.S. at 545–46, 106 S.Ct. 2056.

---

**23.** *See also, e.g., Lilly,* 527 U.S. at 131, 119 S.Ct. 1887 (noting that an accomplice often has considerable interest in betraying his co-criminals); *Lee* (noting that "the arrest statements of a codefendant have traditionally been viewed with suspicion. Due to his strong motive to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence." (cited with approval in *Williamson,* 512 U.S. at 601, 114 S.Ct. 2431)).

Had Ms. Gabow's confession directly corroborated the selected portion of Mr. Cecil's statement, the court might have been correct when it suggested that portion would have been admissible. There was no direct corroboration on this critical point, however. The *Gabow* court relied on other corroborating portions of Ms. Gabow's confession to deem the selected portion of Mr. Cecil's reliable, stating: "Gabow's own confession confirmed every significant aspect of Cecil's confession except the February 17th conversation—and she did not specifically deny Cecil's version of that conversation." *Gabow*, 34 S.W.3d at 79. One party's omission of the existence of a conversation is not proof of another's reliability regarding the substance of that conversation.

Furthermore, if Ms. Gabow intended to claim renunciation as a defense, she would have had no incentive to tell the police about a conversation in which she advised Mr. Cecil about the best time to murder her estranged husband and pressed him to complete the job promptly. Consequently, the magistrate judge concludes that the Kentucky Supreme Court's second proffered guarantee of trustworthiness also did not comport with existing United States Supreme Court precedent.

### 3. Mr. Cecil's Confession Included Facts That He Likely Could Not Have Known, Unless Ms. Gabow Told Him about Them

The third proffered guarantee of truthfulness is likewise not in accordance with Supreme Court precedent. According to the Kentucky Supreme Court, the selected portion of Mr. Cecil's confession is sufficiently reliable, because it attributes statements to Ms. Gabow that contain information "not peculiarly within Cecil's knowledge but peculiarly within Gabow's knowledge." *Gabow*, 34 S.W.3d at 80. The court states, without explanation regarding its significance, that "another fac-

tor giving Cecil's account of the February 17th conversation a particularized guarantee of trustworthiness is that his statement contains information, *i.e.*, the time Frederick Gabow went to work and the date Cheryl Gabow was going to sign the divorce papers, which presumably would have been unknown to Cecil unless furnished to him by Gabow." *Id.* at 79.

The magistrate judge is at a loss, given Supreme Court precedent, to understand how Mr. Cecil's knowledge of Mr. Gabow's work schedule and when the divorce papers were to be signed, somehow guarantees the reliability of his statement. As the Supreme Court has made clear time and time again, the truthfulness of a particular statement must be so clear that cross-examination would be of marginal utility. *Lilly*, 527 U.S. at 136, 119 S.Ct. 1887; *Wright*, 497 U.S. at 819, 110 S.Ct. 3139; *see also Roberts*, 448 U.S. at 63, 100 S.Ct. 2531.

In Ms. Gabow's case, the Kentucky Supreme Court assumes, without any reference to proof at trial, that Mr. Gabow's work schedule and the timing of the divorce were as Mr. Cecil represented. There is no indication in the record that those facts were indeed true. Rather, Mr. Cecil simply could have been making them up in an effort to lend apparent credibility to his attempt to portray Ms. Gabow as the prime mover and task mistress of the murder conspiracy. *Cf. Williamson*, 512 U.S. at 599–600, 114 S.Ct. 2431 ("One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.")(cited with approval in *Lilly*, 527 U.S. at 133, 119 S.Ct. 1887). Even if they were true, in a small community such as the one in which Ms. Gabow and her estranged husband lived, the timing of her divorce and her husband's work schedule could have been gen-

erally known. Alternatively, he could have learned the information in conversations other than the one on February 17th and which predated the alleged renunciation. Without adversarial questioning, however, one cannot know. Consequently, the magistrate judge cannot conclude that cross-examination of the statement at issue would have been of marginal utility. Cross-examination instead would have served a vital purpose in Ms. Gabow's defense.

### 4. There Was No Indication That Mr. Cecil Knew at the Time of His Confession That Ms. Gabow Had Claimed to Have Renounced Her Role in the Conspiracy

The Kentucky Court next states that Mr. Cecil's statement could properly be deemed truthful because the record does not indicate whether he knew that she had claimed to have renounced her role in the conspiracy. According to the court, if Mr. Cecil "had known of Gabow's claimed renunciation, Cecil would have had a greater motive to adopt Gabow's version of the conversation than to contradict it; for Gabow's version was that she and Cecil had *both* renounced any further interest in carrying out the murder." *Gabow*, 34 S.W.3d at 79.

To begin with, the facts as presented in the opinion do not unequivocally support the court's assessment of Mr. Cecil's motive. Mr. Cecil could indeed have renounced, and then rejoined the conspiracy. If that were true, he could have decided that mentioning any attempt at renunciation was irrelevant. The magistrate judge agrees with the Kentucky Supreme Court that it seems unusual that Mr. Cecil, who had been hired to help kill Fred Gabow, would go through with the plan even if Ms. Gabow decided to call off the murder. On the other hand, perhaps Mr. Cecil believed that if he and Mr. McMillan killed Fred Gabow anyway, they could intimidate Ms.

Gabow into remaining and into sharing the life insurance proceeds. Without an opportunity for cross-examination of Mr. Cecil, however, no one can know.

That being said, with respect to the court's analysis in light of Supreme Court precedent, the court initially appears to be on the right track with respect to this factor when it focuses on the circumstances surrounding the making of Mr. Cecil's confession. For, as noted above, the Supreme Court has declared that the truthfulness of a proffered statement must be so clear from "the surrounding circumstances that the test of cross-examination would be of marginal utility." *Lilly*, 527 U.S. at 136, 119 S.Ct. 1887. It has also clarified, however, that the "surrounding circumstances" at issue are those that surround the making of the statement, *not other trial proof* (which arguably, although not definitively, includes any lack thereof). *See id.* at 136, 119 S.Ct. 1887; *Wright*, 497 U.S. at 819, 110 S.Ct. 3139.

Here, Supreme Court precedent indicates that some of the surrounding circumstances militate *against* admitting the statement. *See generally* Section II.B., *supra*. The statement, which described past events, was made in police custody, after Mr. Cecil had been held for several hours and interrogated for more than an hour, was made after the police questioned Ms. Gabow, was made without any contemporaneous adversarial testing, and may have been made after Mr. Cecil knew that Ms. Gabow had already confessed, or after he learned that she was being contemporaneously questioned. *See* Ms. Gabow's Br. on Appeal to the Ky. S.Ct. at 26–27 (attached as an exhibit to docket no. 1). The record is not clear on the last point. Nevertheless, the United States Supreme Court precedent is clear that the Kentucky Supreme Court's fourth proffered guaran-

tee of truthfulness was insufficient to justify admitting Mr. Cecil's statement.

### 5. Ms. Gabow's Claimed Renunciation Exculpated Mr. Cecil as Well as Herself, So That Cecil Had No Motive to Contradict Her Claim

With respect to its fifth proffered guarantee of truthfulness, the *Gabow* court does not explain the significance of this statement. Without the benefit of any citation to Supreme Court precedent, much less any proffered analysis, the magistrate judge cannot discern why the Kentucky court found the fifth putative guarantee to be significant. As the magistrate judge noted above, Mr. Cecil may have indeed renounced his involvement, and then later rejoined the conspiracy. And, if that were the case, he may have deemed the fact of his earlier renunciation to be irrelevant. The magistrate judge will not speculate whether that is true. The point is, that one cannot say that cross-examination regarding the statement would have been of marginal utility. Thus, this factor does not support including the statement among the evidence presented to the jury that convicted both defendants.

### 6. Mr. Cecil Could Have Refuted Ms. Gabow's Renunciation Claim Directly Instead of Inferentially

The *Gabow* court's final proffered guarantee of truthfulness, that Mr. Cecil could have refuted Ms. Gabow's alleged renunciation directly, rather than inferentially, if he wished to "devastate" her renunciation defense, is logically inconsistent with the court's fourth proffered guarantee (*i.e.*, that there is no indication in the record that Mr. Cecil knew of Ms. Gabow's renunciation claims at the time he made his confession). If Mr. Cecil did not know Ms. Gabow had claimed renunciation, why would his failure to attack a defense he did not know had been made in any way be indicative of his truthfulness? The Ken-

tucky Supreme Court simply has not established how this final factor "eliminate[s] the possibility of fabrication, coaching or confabulation." *Wright*, 497 U.S. at 820, 110 S.Ct. 3139. Absent such analysis, the final factor fails as a putative guarantee of trustworthiness.

In summary, each of the factors proffered by the Kentucky Supreme Court as particularized guarantees that Mr. Cecil's statement was so truthful and reliable that the protections guaranteed by the Confrontation Clause were unnecessary lack merit individually. Nor do they collectively augment their individual shortcomings. Consequently, the magistrate judge concludes that the trial court erred when it admitted Mr. Cecil's unredacted confession into evidence, and the Kentucky Supreme Court incorrectly applied and interpreted United States Supreme Court precedent when it affirmed the trial court's decision.

### D. Harmless Error Analysis

■ Typically, in habeas cases, the district court is asked to consider not only whether an alleged error violates the Constitution, but also whether any alleged error, regardless of whether it violated the Constitution, is nonetheless harmless. The petitioner bears the procedural obligation to raise the first argument, the respondent has the obligation to raise the second.

■ In this matter, the respondent did not argue that the petition should not be granted because any error was harmless. Nowhere in the answer itself (docket no. 9) does the respondent assert harmless error as a defense. Although the respondent mentions harmless error in her memorandum of law ("Memorandum") (docket no. 9, behind answer) in support of her answer and her motion to dismiss, she does not

argue the point. Rather, in her "Standard of Review" section, she merely notes that the Antiterrorism and Effective Death Penalty Act did not change Supreme Court precedent on harmless error analysis (Memorandum at 8, 12). Nowhere in her actual argument in support of her answer and her motion to dismiss does she assert that the admission of Mr. Cecil's confession was harmless error. Thus, she has waived the argument. *See Hitchcock v. Dugger,* 481 U.S. 393, 399, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); *United States v. Vallejo,* 237 F.3d 1008, 1026 (9th Cir.2001); *see also Calvert, supra,* 288 F.3d at 835–36 (Cole, J., concurring in the judgment, but disagreeing with the majority on the issue of whether the district court properly engaged in harmless error analysis). The magistrate judge notes, however, that the Kentucky Supreme Court itself declared that the admission of Mr. Cecil's confession was not harmless, *see Gabow,* 34 S.W.3d at 76.

### III. RECOMMENDATION

After carefully reviewing the Kentucky Supreme Court's decision in *Gabow,* the magistrate judge concludes that the court failed to recognize the significance of *Lilly,* and then applied a number of factors to justify the admission of Mr. Cecil's unredacted confession that are not in accordance with *Lilly* and other Supreme Court precedent regarding the Confrontation Clause. Mr. Cecil's confession clearly spreads blame to Ms. Gabow. And, although the Kentucky Supreme Court lists several and varied reasons justifying its belief that Mr. Cecil's statement can properly be accepted as truthful, none establish, as is required, that cross-examination of Mr. Cecil regarding the statement would have been of marginal utility. A significant number of the factors cited by the Kentucky Supreme Court involved the proof at trial, a practice explicitly rejected by *Lilly.*

Accordingly, the magistrate judge concludes that the Kentucky Supreme Court's decision to affirm the trial court's admission of Mr. Cecil's unredacted confession into evidence presented to the same jury that convicted Ms. Gabow was ultimately contrary to and in parts involved an unreasonable application of clearly established federal law. Thus, the magistrate judge recommends that district court should issue a conditional writ of habeas corpus ordering the Commonwealth of Kentucky to release Ms. Gabow unless she is retried in accordance with Supreme Court precedent within one hundred eighty days, and deny the respondent's pending motion (docket no. 7) as moot.